UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LISA A. B.,

                            Plaintiff,

v.                                                          5:20-CV-0423
                                                             (ML)

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
_____

APPEARANCES:                                       OF COUNSEL:

OLINSKY LAW GROUP                    HOWARD D. OLINSKY, ESQ.
   Counsel for the Plaintiff
250 South Clinton Street, Suite 210
Syracuse, New York 13202

SOCIAL SECURITY ADMINISTRATION     HUGH RAPPAPORT, ESQ.
   Counsel for the Defendant                Special Assistant U.S. Attorney
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

MIROSLAV LOVRIC, United States Magistrate Judge

## **MEMORANDUM-DECISION AND ORDER**

      Plaintiff Lisa A. B. ("Plaintiff"), brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Defendant" or "Commissioner"), denying her application for Social Security Disability Insurance ("SSDI") benefits. (Dkt. No. 1.) This case has proceeded in accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Currently before the Court are Plaintiff's motion for judgment on the pleadings (Dkt. No. 15) and Defendant's motion for judgment on the pleadings (Dkt. No. 16).

For the reasons set forth below, Defendant's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is granted. (Dkt. No. 15.) The Commissioner's decision denying Plaintiff SSDI benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I. RELEVANT BACKGROUND

### A. Factual Background

As of the date of the administrative hearing on January 27, 2020, Plaintiff was 57 years old. (Administrative Transcript ("T.") 304.) Plaintiff has at least a high school education and is able to communicate in English. (*Id*.)

Plaintiff had diagnoses that included anxiety due to her medical conditions, back pain, hypertension, irritable bowel syndrome ("IBS"), urinary incontinence, and depression. (T. 233, 237, 258-59, 716.) Plaintiff advised the ALJ that her ability to work was limited by back pain, arthritis in the back, high blood pressure, limited kidney function, IBS, lupus, depression, anxiety, and mood swings. (T. 258, 164.) The ALJ also noted that Plaintiff's anxiety due to her medical conditions was a severe mental impairment. (T. 258.) The ALJ further noted that Plaintiff could have limitations secondary to obesity. (*Id*.)

Plaintiff last worked on March 30, 2012, as a quality assurance inspector of electronic circuit boards, which she had held for 31 years (since September 1981) and was the only job that she held in the last 15 years before she was unable to work. (T. 22, 46-47, 165-166, 257.)

Plaintiff is married and testified that she takes anxiety medication, sits and watches television for two to three hours with breaks, does dishes, carries a light basket of laundry up and down stairs, vacuums around once a month, drives, and assists her husband with shoveling the snow for around one half hour. (T.22-23, 51-52, 140.)

**B.     Procedural History**

On June 17, 2013, Plaintiff filed an application for SSDI, alleging that she became disabled on March 30, 2012, due to IBS and back pain, depression, and anxiety. (T. 20, 48-49.) Plaintiff's application was denied initially on August 21, 2013. (T. 20, 70.) Plaintiff requested a hearing, which was held on February 10, 2015, before Administrative Law Judge ("ALJ") Elizabeth W. Koennecke. (T. 41-60.) The ALJ issued an unfavorable decision on March 16, 2015. (T. 20-33.) The Appeals Council denied Plaintiff's request for review on September 21, 2016. (T. 1-3.)

Plaintiff appealed to the United States District Court for the Northern District of New York before United States Magistrate Judge William B. Mitchell Carter, who remanded the matter for further proceedings on January 26, 2018, due to the evidence being vague and sparse at Step 2 and its potential impact on the assessment at Step 4. (T. 310-325.) More specifically, Magistrate Judge Carter held that the medical record was sparse because Dr. "Elka Lorensen, M.D., provided the only medical opinion in the record . . .", no treating sources statements were received, no non-examining state agency medical examiner provided a review, and the ALJ's determination of Plaintiff's residual functional capacity ("RFC") that Plaintiff could perform lifting, bending, and reaching requirements of medium work, was not supported by substantial evidence. (T. 315-324.) On remand, the ALJ was instructed to reassess steps two, four, and five determinations. (T. 324.)

On remand, ALJ Koennecke held two hearings on August 7, 2019, and January 27, 2020. (T. 281-308.) After the hearings, ALJ Koennecke issued a second unfavorable decision on February 3, 2020. (T. 254-266.)

## C. The ALJ's Decision

Generally, in her decision, the ALJ made the following seven findings of fact and conclusions of law. (T. 257-266.) First, the ALJ found that Plaintiff last met the insured status requirements for benefits under the Social Security Act on December 31, 2017. (T. 257.) Second, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of March 30, 2012, through the date last insured, December 31, 2017. (*Id*.) Third, the ALJ found that Plaintiff had a severe mental impairment, generally characterized as anxiety due to her medical conditions. (T. 258-259.) The ALJ also noted that at the administrative hearings, Plaintiff's representative argued that Plaintiff could possibly have additional limitations secondary to obesity and Plaintiff denied that she could have any other impairments or conditions. (*Id*.) The ALJ found that for much of the period at issue, Plaintiff received no formal treatment, and she managed her condition through over-the-counter probiotics. (T. 259.) Fourth, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 259-261.) More specifically, in review of his findings of no impairments, the ALJ considered Listings 12.06 (anxiety and obsessive-compulsive disorders). (*Id*.) Fifth, the ALJ found that Plaintiff had the RFC to

> perform the full range of work at all exertional levels, but with the following nonexertional limitations. The claimant retains the ability to: understand and follow instructions and directions; perform tasks independently; maintain attention and concentration for tasks; and regularly attend to a routine and maintain a schedule. The claimant can make occasional decisions directly related to the performance of tasks in a position with consistent job duties that does not require the claimant to supervise or manage the work of others. She should avoid work requiring more complex interaction

4

or joint effort to achieve work goals.

(T. 261-263.) Sixth, the ALJ found that Plaintiff was capable of performing past relevant work as a general inspector because the job required only a light level of exertion. (T. 263-265.) The ALJ also agreed with Vocational Expert ("VE") Robert Baker that Plaintiff would have been capable of performing her past work as actually and generally performed. (*Id.*) The ALJ further agreed with VE Baker that Plaintiff would have been able to perform the requirements of representative occupations such as router and housekeeping cleaner, which are classified as light, unskilled work, as well as kitchen helper, which is classified as medium, unskilled work. (*Id.*) The ALJ found that Plaintiff was 57 years old, which is defined as an individual of advanced age (20 C.F.R. 404.1563), on the date last insured. (T. 264.) The ALJ found that Plaintiff has at least a high school education and is able to communicate in English. (*Id.*) The ALJ found that transferability of job skills is not material to the determination of disability because the medical-vocational rules support a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferable job skills. (*Id.*) Importantly, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. (T. 264-265.) Seventh, the ALJ concluded that Plaintiff has not been under a disability from March 30, 2012, through December 21, 2017. (T. 256.)

  D.  **The Parties' Briefings on the Motions**

    1.  **Plaintiff's Motion for Judgment on the Pleadings**

Generally, Plaintiff makes two arguments in support of her motion for judgment on the pleadings. (*See generally* Dkt. No. 15 at 12-22 [Pl.'s Mem. of Law].)

First, Plaintiff argues that substantial evidence does not support the ALJ's mental RFC determination because the ALJ failed to properly weigh opinion evidence from treating therapist

Ms. Maureen Bradley, Licensed Master of Social Work (L.M.S.W.), and from Dr. Gregory Max, M.D. (*Id.* at 12-19.) More specifically, Plaintiff argues that the ALJ failed to properly weigh opinion testimony from Ms. Bradley, whose opinion was endorsed by her supervisor, Dr. Max, that: (1) Ms. Bradley treated Plaintiff once a month for an hour and found she suffered from recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, terror, and a sense of impending doom, (2) Plaintiff is seriously limited in her ability to maintain regular attendance, be punctual, get along with co-workers without unduly distracting them or exhibiting behavioral extremes, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being unduly distracted, complete a normal workday without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, concentrate, or pace herself, (3) Plaintiff's psychiatric condition exacerbates pain, and her anxiety increases her digestive problems, (4) Plaintiff has limitations due to back problems resulting from a car accident, and (5) the ALJ was incorrect that Ms. Bradley's opinion is not supported by objective findings in the medical record because the medical record shows that Plaintiff (a) complained monthly from June 2015 to January 2016 to Ms. Bradley of digestive issues that impacted her ability to work, (b) has anxiety about having an accident at work, while driving, while attending appointments, and at public places, as well as about having diarrhea and about her financial situation, and (c) has a chronic diarrhea condition that persists. (*Id.*) Plaintiff also argues that the ALJ failed to explain why Ms. Bradley's opinion was not supported by Dr. Hasan Zakariyya, M.D., who opined that Plaintiff's symptoms included marked fatigue, altered bowel habits, and increased swelling in the lower legs, and Plaintiff reported symptoms that included constipation, diarrhea, and swelling in her legs, and assessed that she had hypertension

and urinary incontinence. (*Id.*) Plaintiff next argues that the ALJ failed to explain why Ms. Bradley's opinion is unsupported by years of therapy progress notes, when mental illness is often diagnosed based on a Plaintiff's subjective reports, per the Second Circuit in *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir.2008). Plaintiff argues that the ALJ's failure to properly weigh Ms. Bradley's opinion is harmful because her opined limitations are preclusive of any work available by Plaintiff's RFC, including her deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner, her being off-task more than 20 percent of the time during an 8-hour workday due to her impairments and work-related limitations, and VE Baker testified that if Plaintiff is going to be off-task more than 20 percent of her workday, she is not able to perform any work. (Dkt. No. 15 at 12-19.)

Second, Plaintiff argues that substantial evidence does not support the ALJ's physical RFC determination because the ALJ failed to properly weigh opinion evidence from Dr. Lorensen. (*Id.* at 19-22.) More specifically, Plaintiff argues that (1) Dr. Lorensen diagnosed Plaintiff with back pain, hypertension, and a history of IBS, (2) Dr. Lorensen opined that Plaintiff had moderate restrictions in bending, lifting, and reaching, (3) the ALJ incorrectly gave Dr. Lorensen opinion little weight for being inconsistent with the record, (4) the ALJ failed to properly explain how she reached the conclusion that Plaintiff could retain the ability to perform all exertional levels while also rejecting Dr. Lorensen's supported opinion, and (5) the ALJ failed to properly address Dr. Lorensen's opinion was harmful because moderate limitations in reaching, bending, and lifting could limit Plaintiff to sedentary work. (*Id.*)

7

## 2. Defendant's Motion for Judgment on the Pleadings

Generally, Defendant makes two arguments in support of his motion for judgment on the pleadings. (*See generally* Dkt. No. 16 at 4-19 [Def.'s Mem. of Law].)

First, Defendant argues that the ALJ gave well-supported reasons for her decision to discount Ms. Bradley's opinion regarding Plaintiff's mental limitations. (*Id*. at 4-14.) More specifically, Defendant argues that Ms. Bradley is a social worker who, by definition, is not an "acceptable medical source" within the meaning of 20 C.F.R. § 404.1502(a), and, therefore, that the ALJ was required to only consider her assessments but not required to address them under the circumstances of this matter. (*Id*.)

Defendant also argues, *assuming arguendo*, that Dr. Max—the supervising doctor who signed off on Ms. Bradley's notes—was the treating physician, the ALJ acted well within her discretion to give little weight to Ms. Bradley's opinion because the ALJ (1) found that the record does not include, and is not challenged by, objective findings that support her limitations because she completed her report with Plaintiff's help, (2) stated that Ms. Bradley's notes repeatedly show benign mental status examination results because Plaintiff is cooperating, fully oriented, having appropriate perceptions, paying attention, performing calculations, concentrating, and having good abstract abilities of recent memory, remote memory, judgment, insight, and eye contact, (3) stated that Plaintiff denied having anxiety and depression during the period at issue, (4) gave some weight to Dr. Dennis M. Noia, Ph.D., a consultative psychologist who opined that Plaintiff had only mild limitations in her ability to deal with stress and no other mental functioning limitation, (5) gave some weight to Dr. R. Nobel, Ph.D., a state physician, (6) found that Plaintiff (a) has not been placed in a hospital, board and care facility, day treatment program, or other highly supportive living arrangement for persistent or uncontrolled psychiatric

symptoms, (b) did not require recurrent emergency department visits, and (c) had symptoms that appear to have been adequately controlled with counseling and periodic medication management, (7) found that Plaintiff's earnings records reflect that despite her bathroom problem, she worked extensively after her 1993 accident, received no formal treatments, and managed using over-the-counter probiotics, (8) discounted Ms. Bradley's opinion that Plaintiff required access to a restroom "whenever necessary" and that she "may" arrive late to work if she has to use a restroom during her commute because (a) Ms. Bradley, a social worker, was not competent to comment on gastrointestinal ("GI") conditions, (b) Dr. Max did not treat Plaintiff for GI issues, (c) Plaintiff had not undergone any significant GI treatments, (d) Plaintiff described her problem as "either being constipated or having diarrhea," and the former does not require access to a restroom, (e) Plaintiff could plan for restroom breaks into her commute and every employee requires access to a restroom "whenever necessary," (f) Ms. Bradley did not quantify either how often or the length of time of each bathroom break Plaintiff would require and a VE testified that federal law requires employers to provide ready access to a restroom, and (g) the Fourth Circuit in *Bergen v. Bowen*, 883 F.2d 68, 1989 WL 90515, at *2 (4th Cir. Aug. 3, 1989) affirmed a Social Security benefits denial despite the ALJ's finding that the claimant, among other limitations, needed to take breaks "to use the restroom for bowel movements 10 to 11 times per day," (9) found that while Ms. Bradley notes Plaintiff has fecal incontinence, Dr. Zakariyya diagnosed Plaintiff with urinary incontinence, (10) found that Ms. Bradley is not an "acceptable medical source" to diagnose an anxiety disorder, (11) found that Plaintiff's diagnoses do not establish significant limitation in her ability to do basic work activities, and (12) found that Ms. Bradley had seen Plaintiff for less than five months and a total of six encounters. (*Id*.)

9

Second, Defendant argues that the ALJ gave good and well-supported reasons for her decision to discount Dr. Lorensen's opinion regarding physical limitations. (*Id*. at 15-19.) More specifically, Defendant argues that (1) the ALJ found that Dr. Lorensen (a) is a consultative examiner who never treated Plaintiff, and ALJs must consider opinions from such sources, alongside the rest of the relevant evidence, (b) opinion was inconsistent with the overall record, specifically the opinion of Dr. Michael D. Falkove, M.D., who reviewed the entire record (including Dr. Lorensen's opinion) and found no evidence of Plaintiff having any physical limitations, and (c) had an opinion that was not well supported by her own examination results, (2) Plaintiff cannot sustain her burden of establishing that she suffered prejudice arising from an alleged error by Dr. Lorensen because the ALJ, who relied on the testimony from two VEs, found that Plaintiff was not disabled and could perform her past relevant work as an inspector and other work such as a router and housekeeping cleaner, of which there were over 185,000 jobs in the national economy, and (3) while Dr. Lorensen diagnosed Plaintiff with various impairments, including IBS "by history," her diagnoses do not demonstrate that the impairments cause functional limitations beyond those set forth in the RFC, and Dr. Falkove then reported that "[t]here is no evidence of IBS." (*Id*.)

## II. APPLICABLE LEGAL STANDARDS

### A. Standard of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm the ALJ's decision if it reasonably doubts

10

whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). To facilitate the Court's review, an ALJ must set forth the crucial factors justifying her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010) (Kahn, D.J.); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153. In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if

11

the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

### B. Standard for Benefits[1]

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2015). In addition, plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2015). Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity"

---

[1] The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

## III. ANALYSIS

### A. Whether the ALJ Properly Weighed Mental Health Opinion Evidence from Ms. Bradley and Dr. Max

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 16, at 4-14 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis, which is intended to supplement but not supplant Defendant's reasons.[2]

"An ALJ should consider 'all medical opinions received regarding the claimant.'" *Reider v. Colvin*, 15-CV-6517, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting *Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)); *see also* SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). When weighing opinions from sources who are not considered "medically acceptable sources" under the regulations, the ALJ must consider the same factors as used for evaluating opinions from medically acceptable sources. *Saxon v. Astrue*, 781 F. Supp. 2d 92,

---

[2]    On January 18, 2017, the Social Security Administration ("SSA") published a final rule that changed the protocol for evaluating medical opinion evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (codified at 20 C.F.R. §§ 404 & 416). Those new regulations apply only to claims filed with the SSA on or after March 27, 2017. Because Plaintiff's claim was filed before that date, to the extent that the regulations are cited, the Court refers to versions of the regulations that were in effect prior to March 27, 2017.

104 (N.D.N.Y. 2011) (Mordue, J.) (citing *Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010)); SSR 06-03p, 2006 WL 2329939. Opinions from medical sources that are not considered acceptable medical sources are "important and should be evaluated on key issues such as impairment severity and functional effects." *Anderson v. Astrue,* 2009 WL 2824584, at *9 (E.D.N.Y.2009) (quoting SSR 06-03p). However, the ALJ "has the discretion to determine the appropriate weight to accord the [other source]'s opinion based on all the evidence before him." *Diaz v. Shalala,* 59 F.3d 307, 314 (2d Cir.1995).

Social workers are defined as "other sources." Social Security Ruling 06–03p provides:

> In addition to evidence from "acceptable medical sources," we may use evidence from "other sources," as defined in 20 CFR 404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function. These sources include, but are not limited to:
>
> - Medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists . . .;
>
> Information from these "other sources" cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose. However, information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

SSR 06-03p, 2006 WL 2329939, at *2-3 (S.S.A. 2006).

Here, the record contains evidence that Ms. Bradley is a licensed social worker whose medical notes were endorsed by Dr. Max, and Plaintiff concedes that Ms. Bradley is not an "acceptable medical source" but argues that the ALJ was required to evaluate her opinion pursuant to SSR 06-03p. (Dkt. No. 15 at 15-16.) I find that the ALJ correctly evaluated Ms.

14

Bradley's opinion pursuant to SSR 06-03p because the ALJ did not "establish the existence of a medically determinable impairment" but, rather, used Ms. Bradley's opinions, which are "based on [her] special knowledge of the individual" that she gained from seeing Plaintiff during six encounters for around five months, to compare evidence from doctor opinions elsewhere in the medical record to "provide insight into the severity of the impairment." (T. 258.)

At step two, the ALJ must determine whether the claimant has a severe impairment that significantly limits a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. § 404.1520(c). "Although the Second Circuit has held that this step is limited to 'screening out *de minimis* claims' [], the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition severe." *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (Suddaby, J.) (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995); *Colvin v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)). Overall, the claimant retains the burden of presenting evidence to establish severity. *Taylor*, 32 F. Supp. 3d at 265 (citing *Miller v. Comm'r of Soc. Sec.*, 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008) (Scullin, J.)).

"It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such." *Bliss v. Colvin*, 13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) (Sharpe, J.); *See also Petell v. Comm'r of Soc. Sec.*, 12-CV-1596, 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014) (Kahn, J.). Inconsistency or lack of support from the evidence can constitute a good reason for rejecting an opinion, even from a treating physician. *See Saxon*, 781 F. Supp. 2d at 102 ("The less consistent an opinion is with the record as a whole, the less weight it is to be given.") (citing *Stevens v. Barnhart*, 473 F. Supp.

2d 357, 362 (N.D.N.Y. 2007) (Bianchini, M.J.)); *Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 889 (2d Cir. 2007) (noting that an ALJ may reject an opinion from a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record") (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)); 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (indicating that the extent that an opinion is consistent with the record as a whole is one of the factors considered when determining the amount of weight to which an opinion is entitled).

Here, the ALJ gave less than controlling weight to Ms. Bradley's opinions because they are inconsistent with the medical record. (T. 258, 263.) The ALJ recognized that "mental health professionals have given the claimant various diagnoses and characterized her mental impairment in various ways" (*id*.), but the ALJ also cites medical health professional Dr. Noia who opined that Plaintiff had only a mild limitation in dealing with stress and no other limitation for mental functioning. (T. 236-37, 260, 263.) The ALJ states that Dr. Noia found that Plaintiff (1) had average range intellectual functioning, (2) had intact attention, concentration, and memory skills, (3) was cooperative, appeared relaxed, and comfortable, (4) had adequate social skills, (5) made appropriate eye contact, (6) had normal motor behavior, (7) had thinking that was coherent and goal-directed, (8) was fully oriented, and (9) had sensorium that was clear. (*Id*.) Also, the ALJ cites the opinion of Dr. Nobel, who opined that Plaintiff's mental impairment was non-severe, meaning that it did not significantly limit her ability to do basic work activities. (T. 64-65, 263).

In addition, the Second Circuit has said that, "[a Social Security] claimant's subjective report of [his] symptoms is not controlling but must be supported by medical evidence." *Vilardi v. Astrue*, 447 F. App'x 271, 272 (2d Cir. 2012) (quoting 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §

16

404.1529). "The issue is not whether [claimant's] limited ability to undertake normal daily activities demonstrates her ability to work. Rather, the issue is whether the ALJ properly discounted [claimant's] testimony regarding her symptoms to the extent that it is inconsistent with other evidence." *Morris v. Comm'r of Soc. Sec.*, 12-CV-1795, 2014 WL 1451996, at *8 (N.D.N.Y. Apr. 14, 2014) (Wesley, J.). Any statements that are not consistent with the record are subject to a credibility analysis. *See Meadors v. Astrue,* 370 F. App'x 179, 184 (2d Cir. 2010) (holding that the ALJ improperly substituted his own opinion regarding an MRI of the plaintiff's spine for that of the treating physician, who opined claimant had significant back pain); *Otero v. Colvin,* 12-CV-4757, 2013 WL 1148769, at *7 (E.D.N.Y. 2013) ("[I]t makes little sense to decide on a claimant's RFC prior to assessing her credibility. It merely compounds the error to then use that RFC to conclude that a claimant's subjective complaints are unworthy of belief."); *see also Yu v. Astrue,* 963 F. Supp. 2d 201, 201, 217-218 (E.D.N.Y. 2013).

An ALJ can afford less than controlling weight to a source who relied on subjective reports. *See Aldrich v. Astrue,* 08-CV-0402, 2009 WL 3165726, at *7 (N.D.N.Y. Sept. 28, 2009) (McAvoy, J.) (finding that the ALJ was entitled to afford less than controlling weight to the opinion of a treating physician who appeared to rely on the plaintiff's subjective complaints more than any diagnostic or clinical evidence); *Dailey v. Comm'r of Soc. Sec.*, 14-CV-1518, 2016 WL 922261, at *5 (N.D.N.Y. Feb. 18, 2016) (Carter, M.J.) (noting that "[a]n ALJ may provide less weight to a treating source's opinion if that opinion is based on plaintiff's subjective complaints and not on objective medical evidence") (citing *Rivera v. Colvin*, 592 F. App'x 32, 33 (2d Cir. 2015), *report and recommendation adopted by* 2016 WL 917941 (N.D.N.Y. Mar. 10, 2016) (Suddaby, C.J.); *see also Roma v. Astrue*, 468 F. App'x 16, 19 (2d Cir. 2012); *Ford v. Astrue*, 06-CV-1227, 2010 WL 3825618, at *9 (N.D.N.Y. Sept. 24, 2010) (Kahn, J.).

Since the ALJ has the benefit of directly observing a claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment is generally entitled to deference. *Weather v. Astrue*, 32 F. Supp. 3d 363, 381 (N.D.N.Y. 2012) (Kahn, J.) (citing *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999)). "While it is 'not sufficient for the [ALJ] to make a single, conclusory statement that' the claimant is not credible or simply to recite the relevant factors, [] remand is not required where 'the evidence of record permits us to glean the rational of the ALJ's decision.'" *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

Here, the ALJ found that Ms. Bradley's opinions "clearly demonstrate[ed] that said report is not an entirely objective account of [Plaintiff's] abilities" (emphasis omitted) (T. 263) because Ms. Bradley based her opinions on Plaintiff's own subjective assessments (T. 258, 684) and because Ms. Bradley's opinions were not "supported by medical evidence" (T. 258, 263). Ms. Bradley's notes from June 2015 to January 2016 were completed by Ms. Bradley with the aid of Plaintiff's own assessments and do not include tests or verification of claims by Ms. Bradley or through an examination of the medical record. Therefore, there was good reason for discounting Ms. Bradley's opinions. *See Gates v. Astrue*, 338 F. App'x 46, 49 (2d Cir. 2009) (holding that an ALJ "acted within his discretion in according [an opinion] little weight" because it was based on the claimant's "subjective complaints about his mental limitations"); *Merkley v. Comm'r of Soc. Sec.*, 16-CV-1394, 2017 WL 4512448, at *4 (N.D.N.Y. Oct. 10, 2017) (Suddaby, C.J.) ("A source's reliance on a claimant's subjective reports rather than the medical evidence constitutes a good reason for affording less weight to a medical opinion" about mental limitations.); *Dailey*, 2016 WL 922261, at *5 ("An ALJ may provide less weight to a treating source's opinion if that opinion is based on plaintiff's subjective complaints and not on objective medical evidence.");

18

*see also, e.g.*, *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011) (when a doctor "merely regurgitates [a claimant's] self-described symptoms," that "is not a 'medical opinion' at all").

As a result, I find that the ALJ properly weighed the medical opinion evidence from Ms. Bradley and Dr. Max.

### B. Whether the ALJ Properly Weighed Physical Health Opinion Evidence from Dr. Lorensen

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 16, at 14-19 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis, which is intended to supplement but not supplant Defendant's reasons.

As previously noted, at step two, the ALJ must determine whether the claimant has a severe impairment that significantly limits a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. § 404.1520(c). Also, as previously noted, inconsistency or lack of support from the evidence can constitute a good reason for rejecting an opinion even from a treating physician. *See Saxon*, 781 F. Supp. 2d at 102 ("The less consistent an opinion is with the record as a whole, the less weight it is to be given.") (citing *Stevens*, 473 F. Supp. at 362).

Here, the ALJ gave little weight to Dr. Lorensen's opinions because they "are inconsistent with the scant clinical record in this case." (T. 259.) The ALJ specifically found Dr. Lorensen's opinion to be "poorly supported by her own examination results, which document only a reduction in the [Plaintiff's] range of lumbar spine motion and a 20 percent decrease in the [Plaintiff's] ability to squat." (T. 232, 259.) The ALJ also found inconsistency between the opinion evidence of Dr. Lorensen and the opinion evidence of Dr. Falkove, who reviewed the entire record (including Dr. Lorensen's opinion) and found no evidence of Plaintiff having any

19

physical limitations. (T. 259.) The ALJ specifically cited Dr. Falkove's testimony that "there was no evidence of record such as would support a claim of disability due to physical impairments (Testimony)." (*Id.*)

As a result, Defendant's motion for judgment on the pleadings is granted and Plaintiff's motion for judgment on the pleadings is denied.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 15) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 16) is **GRANTED**; and it is further

**ORDERED** that the Commissioner's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: June 21, 2021
       Binghamton, New York

_____
Hon. Miroslav Lovric
United States Magistrate Judge